UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.:

## CIVIL ACTION COMPLAINT

| | | |
|---|---|---|
| Larry Woolard and Anne Woolard, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| Carrier Corporation; | : | |
| Chicago Bridge & Iron Company; | : | |
| Chicago Bridge & Iron Company (Delaware); | : | |
| Cleaver-Brooks, Inc. f/k/a Aqua-Chem, Inc. d/b/a Cleaver-Brooks Division; | : | |
| Compudyne LLC f/k/a Compudyne Corporation (sued individually and as successor-in-interest to York Shipley, Inc.); | : | |
| Fisher Controls International, LLC; | : | |
| Foster Wheeler Energy Corporation; | : | |
| General Electric Company; | : | |
| The Gores Group, LLC d/b/a Compudyne Corporation (sued individually and as successor-in-interest to York Shipley, Inc.); | : | **JURY TRIAL DEMANDED** |
| Gould Electronics, Inc. (sued as successor-in-interest to ITE Circuit Breaker Company); | : | |
| Honeywell International, Inc. f/k/a Allied-Signal, Inc. (sued as successor-in-interest to Bendix Corporation); | : | |
| Invensys Systems, Inc. (sued individually and as successor-in-interest to the Foxboro Company); | : | |
| Metropolitan Life Insurance Company; | : | |
| Siemens Corporation (sued as successor-in-interest to ITE Circuit Breaker Company); | : | |
| Taylor Valve Technology, Inc.; | : | |
| Union Carbide Corporation; | : | |
| Weir Valves & Controls USA, Inc. f/k/a Atwood & Morrill, | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

Plaintiffs Larry Woolard and Anne Woolard sue the above-named Defendants for

1

compensatory and punitive damages and allege as follows:

**PARTIES**

1.      Plaintiffs Larry Woolard and Anne Woolard are citizens and residents of the County of Guilford, State of North Carolina.

2.      Defendant, **CARRIER CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut.  At all times material hereto, CARRIER CORPORATION was a manufacturer of asbestos-containing Carrier heating and air conditioning systems.  CARRIER CORPORATION has and does business in the State of North Carolina.

3.      Defendant, **CHICAGO BRIDGE & IRON COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. At all times material hereto, CHICAGO BRIDGE & IRON COMPANY was a manufacturer of asbestos-containing Chicago Bridge & Iron Digesters. CHICAGO BRIDGE & IRON COMPANY has and does business in the State of North Carolina.

4.      Defendant, **CHICAGO BRIDGE & IRON COMPANY (DELAWARE)**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas.  At all times material hereto, CHICAGO BRIDGE & IRON COMPANY (DELAWARE) was a manufacturer of asbestos-containing Chicago Bridge & Iron Digesters. CHICAGO BRIDGE & IRON COMPANY (DELAWARE) has and does business in the State of North Carolina.

5.      Defendant, **CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Georgia.  At all times material hereto, CLEAVER-BROOKS, INC. f/k/a AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION was a manufacturer of asbestos-containing Cleaver-Brooks Boilers. CLEAVER-BROOKS, INC. f/k/a

2

AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION has and does business in the State of North Carolina.

6.      Defendant, **COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.), was and is a limited liability company incorporated under the laws of the State of Nevada with its principal place of business in California. The members of the "LLC" who comprise COMPUDYNE LLC f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) are: Joe Awad and Eric Hattler who reside and/or work in Beverly Hills, California; and Amanda Calender and Catherine Pollard who reside and/or work in Boulder, Colorado.  At all times material hereto, COMPUDYNE LLC f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) was a manufacturer of asbestos-containing York heating and air-conditioning systems. COMPUDYNE LLC f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) has and does business in the State of North Carolina.

7.      Defendant, **FISHER CONTROLS INTERNATIONAL, LLC**, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Missouri. The members of the "LLC" who comprise FISHER CONTROLS INTERNATIONAL, LLC are: Teresa Burnett who resides and/or works in Saint Louis, Missouri; Steven Chelesnik who resides and/or works in Minneapolis, Minnesota; and Deborah Vogeler and Kevin Meyer who reside and/or work in Marshalltown, Iowa.  At all times material hereto, FISHER CONTROLS INTERNATIONAL, LLC was a manufacturer of asbestos-containing Fisher Valves. FISHER CONTROLS INTERNATIONAL, LLC has and does business in the State of North Carolina.

3

8.     Defendant, **FOSTER WHEELER ENERGY CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey.  At all times material hereto, FOSTER WHEELER ENERGY CORPORATION was a manufacturer of asbestos-containing Foster Wheeler Boilers.  FOSTER WHEELER ENERGY CORPORATION has and does business in the State of North Carolina.

9.     Defendant, **GENERAL ELECTRIC COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal places of business in Connecticut and Massachusetts.  At all times material hereto, GENERAL ELECTRIC COMPANY was a manufacturer of asbestos-containing General Electric Motors and Masoneilan Valves.  GENERAL ELECTRIC COMPANY has and does business in the State of North Carolina.

10.    Defendant, **THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.), was and is a limited liability company incorporated under the laws of the State of Delaware with its principal places of business in California and Colorado. The members of the "LLC" who comprise THE GORES GROUP, LLC d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) are: Joe Awad and Eric Hattler who reside and/or work in Beverly Hills, California; and Amanda Calender and Catherine Pollard who reside and/or work in Boulder, Colorado.  At all times material hereto, THE GORES GROUP, LLC d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) was a manufacturer of asbestos-containing York heating and air-conditioning systems. THE GORES GROUP, LLC d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) has and does business in the State of North Carolina.

11.    Defendant, **GOULD ELECTRONICS, INC.** (sued as successor-in-interest to ITE CIRCUIT BREAKER COMPANY), was and is a company incorporated under the laws of the State

4

of Arizona with its principal place of business in Ohio. At all times material hereto, GOULD ELECTRONICS, INC. (sued as successor-in-interest to ITE CIRCUIT BREAKER COMPANY) was a manufacturer of asbestos-containing ITE Circuit Breakers. GOULD ELECTRONICS, INC. (sued as successor-in-interest to ITE CIRCUIT BREAKER COMPANY) has and does business in the State of North Carolina.

12.     Defendant, **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION) was a manufacturer of asbestos-containing Bendix Brakes. HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION) has and does business in the State of North Carolina.

13.     Defendant, **INVENSYS SYSTEMS, INC.** (sued individually and as successor-in-interest to THE FOXBORO COMPANY), was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts. At all times material hereto, INVENSYS SYSTEMS, INC. (sued individually and as successor-in-interest to THE FOXBORO COMPANY) was a manufacturer of asbestos-containing Foxboro Valves. INVENSYS SYSTEMS, INC. (sued individually and as successor-in-interest to THE FOXBORO COMPANY) has and does business in the State of North Carolina.

14.     Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. At all times material hereto, METROPOLITAN LIFE INSURANCE COMPANY conspired with other asbestos suppliers and asbestos-containing product and/or equipment

5

manufacturers to mislead the public as to the hazards of asbestos. METROPOLITAN LIFE INSURANCE COMPANY has and does business in the State of North Carolina.

15. Defendant, **SIEMENS CORPORATION** (sued as successor-in-interest to ITE CIRCUIT BREAKER COMPANY), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Washington, D.C. At all times material hereto, SIEMENS CORPORATION (sued as successor-in-interest to ITE CIRCUIT BREAKER COMPANY) was a manufacturer of asbestos-containing ITE Circuit Breakers. SIEMENS CORPORATION (sued as successor-in-interest to ITE CIRCUIT BREAKER COMPANY) has and does business in the State of North Carolina.

16. Defendant, **TAYLOR VALVE TECHNOLOGY, INC.,** was and is a company incorporated under the laws of the State of Oklahoma with its principal place of business in Oklahoma. At all times material hereto, TAYLOR VALVE TECHNOLOGY, INC. was a manufacturer of asbestos-containing Taylor Valves. TAYLOR VALVE TECHNOLOGY, INC. has and does business in the State of North Carolina.

17. Defendant, **UNION CARBIDE CORPORATION**, was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION was a supplier of asbestos fibers. UNION CARBIDE CORPORATION has and does business in the State of North Carolina.

18. Defendant, **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL, was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts. At all times material hereto, WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL was a manufacturer of asbestos-containing Atwood & Morrill Valves. WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL has and does business in the State of North Carolina.

6

19. Plaintiffs bring this action for monetary damages as a result of Plaintiff Larry Woolard contracting an asbestos-related disease. Plaintiff Larry Woolard was diagnosed with mesothelioma on or about March 18, 2018.

20. Plaintiff Larry Woolard was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a) From approximately the 1950's through the 1960's, Plaintiff Larry Woolard experienced exposure to asbestos while performing maintenance on his personal automobiles at his personal residences in the cities of Washington and Greenville, North Carolina. During this time, Plaintiff Larry Woolard worked with and around asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Bendix Brakes.

(b) From approximately 1956 to 1961, Plaintiff Larry Woolard experienced exposure to asbestos while serving in the U. S. Air Force as a refrigeration mechanic at various locations including, but not limited to: Lackland Air Force Base, San Antonio, Texas; Fort Belvoir, Virginia; Truax Field, Madison, Wisconsin; Korea; McChord Air Force Base, Tacoma, Washington; and Norton Air Force Base, San Bernadino, California. During this time, Plaintiff Larry Woolard worked with and around asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Carrier heating and air conditioning systems, York heating and air conditioning systems, and ITE Circuit Breakers.

(c) From approximately 1961 to 1963, Plaintiff Larry Woolard experienced

7

exposure to asbestos while working as a HVAC helper for an unrecalled contractor at various A&P Grocery Stores in North Carolina. During this time, Plaintiff Larry Woolard worked with and around asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Carrier heating and air conditioning systems, York heating and air conditioning systems, and ITE Circuit Breakers.

(d) From approximately 1965 to 1978, Plaintiff Larry Woolard experienced exposure to asbestos while working as a HVAC apprentice, mechanic and supervisor for Weyerhaeuser Paper Mill in the cities of New Bern and Plymouth, North Carolina. During this time, Plaintiff Larry Woolard worked with and around asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Babcock & Wilcox Boilers, Chicago Bridge & Iron Digesters, Johns- Manville Pipe Covering, Garlock Packing, General Electric Motors, Atwood & Morrill Valves, Fisher Valves, Foxboro Valves, Masoneilan Valves, Taylor Valves, and ITE Circuit Breakers. He was also exposed to asbestos fibers supplied by Union Carbide Corporation.

(e) From approximately 1978 to 1999, Plaintiff Larry Woolard experienced exposure to asbestos while working as a sales representative and supervisor for Taylor Instrument Company l/k/a Combustion Engineering l/k/a ABB in New Bern, North Carolina, and Mobile, Alabama. His duties required him to work at various refineries, paper mills, chemical mills, and industrial

8

plants in North Carolina, South Carolina, Virginia, Mississippi, including the Chevron Plant in Pascagoula, Mississippi, Florida, including Merck Corporation and Disney World in Florida, Germany, Switzerland and Ireland. During this time, Plaintiff Larry Woolard worked with and around asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Cleaver-Brooks Boilers, Foster Wheeler Boilers, Fisher Valves, Masoneilan Valves, Taylor Valves, and ITE Circuit Breakers.

21.     At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of said Defendants.

22.     At all material times, the Defendants manufactured, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products either directly or indirectly to Plaintiff Larry Woolard, Plaintiff Larry Woolard's employers, or to such other entities so that said asbestos-containing products and/or equipment were caused to be used at Plaintiff Larry Woolard's job sites and personal residences.

23.     At all material times, Defendant Metropolitan Life Insurance Company conspired with other Defendants to disseminate false and misleading medical and/or scientific information regarding the safety of asbestos and demonstrated a clear disregard for the health, safety and welfare of individuals such as Plaintiff Larry Woolard.

## JURISDICTION AND VENUE

24.     This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

25.     Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

26.     Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens of the same state as Plaintiffs.  The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

27.     Plaintiffs have satisfied all conditions precedent to the filing of this action.

28.     All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina Courts pursuant to the North Carolina Long-Arm Statute. Each Defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, which are or in the past were sold, distributed, and used in North Carolina.  As mentioned above, Plaintiff Larry Woolard was exposed to various asbestos, and/or asbestos-containing products, and/or dust from equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products while he was working at his personal

10

residences in North Carolina, and at various jobsites in North Carolina, South Carolina, Texas, Wisconsin, Washington, California, Virginia, Mississippi and Florida.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
**(Against all named Defendants except Metropolitan Life Insurance Company)**

29.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

30.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "Defendants' Products").

31.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past certain Defendants' Products to be placed in the stream of interstate commerce with the result that Defendants' Products came into use by Plaintiff Larry Woolard.

32.     Throughout the course of his employment and while performing repairs to his personal automobiles, Plaintiff Larry Woolard was exposed to Defendants' Products which were mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

33.     During the course and scope of his employment and while performing maintenance to his personal automobiles, Plaintiff Larry Woolard was exposed to Defendants' Products, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

34.     Defendants, acting by and through their servants, agents and employees duly authorized and acting within the scope and authority of their employment had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective

11

and/or a duty to warn Plaintiff Larry Woolard and foreseeable users of and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care should have known.

35. Plaintiff Larry Woolard, whose livelihood was dependent upon the work that he did for his various employers, and through his maintenance of his personal automobiles, was required to work with and around Defendants' Products that were manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed and performing maintenance to their personal automobiles, such as Plaintiff Larry Woolard, would be required to and would come into contact with and would work in close proximity to Defendants' Products.

36. Plaintiff Larry Woolard sustained injuries, illnesses, disabilities and/or damages caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff Larry Woolard's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put Defendants' Products into the market and into the stream of interstate commerce while they knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Larry Woolard's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff Larry Woolard would not know of such dangers to his health.

37. Plaintiff Larry Woolard's injuries, illnesses, disabilities and/or damages are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that even though the Defendants knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous, and highly harmful to Plaintiff Larry

12

Woolard's body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)   Failed to advise Plaintiff Larry Woolard of the dangerous characteristics of Defendants' Products;

(b)   Failed or omitted to provide Plaintiff Larry Woolard with the knowledge as to what would be reasonably safe and sufficient apparel, protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth these were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful Defendants' Products;

(c)   Failed and omitted to place any warnings or sufficient warnings on the containers of Defendants' Products or on Defendants' Products themselves to warn handlers and bystanders of the dangers to health in coming in contact with Defendants' Products;

(d)   Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing Defendants' Products;

(e)   Inadequately warned, if in fact they warned at all, persons such as Plaintiff Larry Woolard of the dangers to their health in coming in contact with and breathing asbestos fibers from Defendants' Products;

(f)   Failed to recommend methods to improve the work environment;

(g)   Failed to develop alternative products;

(h)   Continued to use a known cancer-causing product, to-wit: asbestos; and

13

(i)     After discovering that asbestos exposure caused a progressive lung disease, Defendants did not inform Plaintiff Larry Woolard of the need for monitoring and periodic evaluations up to and including the filing of this Complaint.

38.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products. The Defendants' Products in question were defective at the time they left the control of the Defendants.

39.     Defendants were negligent and breached their duty of due care to Plaintiff Larry Woolard by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff Larry Woolard and other foreseeable users and bystanders in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of Defendant's Products at issue in the stream of commerce.

40.     The hazards posed by exposure to Defendants' Products and the resulting injuries, illnesses, disabilities and/or damages to Plaintiff Larry Woolard were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

41.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff Larry Woolard developed mesothelioma as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

42.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

### SECOND CAUSE OF ACTION
### PRODUCT LIABILITY – INADEQUATE DESIGN OR FORMULATION
**(Against all named Defendants except Metropolitan Life Insurance Company)**

43.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

14

44. At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

45. Defendants, acting through their agents, servants, and/or employees placed in the stream of commerce Defendants' Products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that Defendants' Products came into use by Plaintiff Larry Woolard.

46. Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Larry Woolard and foreseeable users of and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care, should have known.

47. Defendants acted unreasonably in designing and/or formulating Defendants' Products which were harmful to Plaintiff Larry Woolard's body, lungs, respiratory system, skin and health. Defendants acted unreasonably in the following acts and/or omissions:

    (a) Failing to adopt a practical, feasible, and otherwise reasonably alternative design that was safer, that could have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff Larry Woolard without substantially impairing the usefulness, practicality or desirability of Defendants' Products; and

    (b) Using a design that was so unreasonable that reasonable person, aware of the relevant facts, would not use or consume Defendants' Products of this design.

15

48.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products. Defendants' Products in question were defective at the time they left the control of the Defendants.

49.     Defendant's unreasonable acts in designing Defendants' Products manufactured, distributed, sold and specified by Defendants were a proximate cause of Plaintiff Larry Woolard's development of mesothelioma, and as a consequence of which through no fault of his own, he was severely injured, disabled and damaged.

50.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
**(Against all named Defendants except Metropolitan Life Insurance Company)**

51.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

52.     The Defendants impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their particular intended use.

53.     The implied warranty made by the Defendants that Defendants' Products were of good and merchantable quality and fit for their particular intended use was breached in that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff Larry Woolard carried out his duties while working with or in the vicinity of Defendants' Products.

54.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for their particular intended use, Plaintiff Larry Woolard developed an illness, to-wit: mesothelioma.

55.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

16

## FOURTH CAUSE OF ACTION
## WILLFUL AND WANTON CONDUCT
**(Against all named Defendants except Metropolitan Life Insurance Company)**

56.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

57.     Plaintiff Larry Woolard and others in his position worked with and/or was in close proximity to Defendants' Products used and/or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff Larry Woolard's presence as well as others, was known or in the exercise of reasonable care should have been anticipated by the Defendants and each of them.

58.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicated that Defendants' Products were hazardous to the health and safety of Plaintiff Larry Woolard and others in Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, therefore depriving them of the opportunity of free choice as to whether or not to expose themselves to Defendants' Products. As a result, Plaintiff Larry Woolard was severely damaged as is set forth below.

59.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff Larry Woolard the knowledge with which to take necessary safety precautions, such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

> (a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

17

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of Defendants' Products, such rejection being motivated by the possibility of adverse effects on profits; and

(e)     delaying the use of and/or providing intentionally inadequate warnings on Defendants' Products.

60.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff Larry Woolard and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of, the dangerous effect of Defendants' Products upon the body of human beings, including Plaintiff Larry Woolard and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit dangerous Defendants' Products with full knowledge that Defendants' Products were being used and would be used in the future to the detriment of the health of Plaintiff Larry Woolard and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

61.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of users and bystanders such as Plaintiff Larry Woolard, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were

18

willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of Defendants' Products.

**FIFTH CAUSE OF ACTION**
**FAILURE TO WARN**
**(Against all named Defendants except Metropolitan Life Insurance Company)**

62.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

63.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with Defendants' Products and of exposure to inhalable asbestos.

64.     Defendants had a pre- and post-sale duty to warn Plaintiff Larry Woolard individually, and individuals working at Plaintiff Larry Woolard's jobsites, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

65.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants failed to warn and/or inadequately warn Plaintiff Larry Woolard of the dangers including, but not limited to:

(a)     Failing to provide adequate cautions, warnings, hazard statements and/or explanations with Defendants' Products which should have been designed to provide Plaintiff Larry Woolard knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

(b)     Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' Products which should have been designed to provide Plaintiff

19

Larry Woolard knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

(c) Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards to them caused by exposure to and dust from Defendants' Products, and how to eliminate the hazards;

(d) Failing to adequately test and research Defendants' Products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff Larry Woolard;

(e) Failing to inspect the workplace in which Defendants' Products were being used to determine if the Defendants' Products being used were deleterious to the health of exposed workers;

(f) Failing to design, process and transport Defendants' Products in a manner intended to minimize exposure during normal working conditions;

(g) Failing to specify and market Defendants' Products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of Defendants' Products after it was known or should have been known that adequate protective measures were not being implemented;

(h) Failing to recall their defective Defendants' Products or manufacture a reasonably safer alternative;

(i) Failing to take adequate precautions and industrial hygiene measures to protect exposed workers as Plaintiff Larry Woolard when installing,

20

repairing, or tearing out Defendants' Products including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to Plaintiff Larry Woolard and workers and bystanders in the facilities at issue that exposure to dust and fibers from Defendants' Products was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)    Otherwise failing to act reasonably under the totality of the circumstances.

66.    Defendants manufactured, processed and/or sold Defendants' Products used by Plaintiff Larry Woolard, or by workers around him, during his employment and maintenance of his personal automobiles. Thus, Defendants had a pre- and post-sale duty to warn individuals working at jobsites or during maintenance of their personal vehicles including, but not limited to, Plaintiff Larry Woolard, of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' Products.

67.    Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to Defendants' Products. Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to users and bystanders.

68.    At the time Defendants' Products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant,

such as Plaintiff Larry Woolard. In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that Defendants' Products posed a substantial risk of harm to a reasonably foreseeable user such as Plaintiff Larry Woolard, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

69. Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' Products or to provide proper instructions on the use, handling, and storage of Defendants' Products caused Plaintiff Larry Woolard to develop mesothelioma and as a consequence of which he was injured, disabled and damaged, therefore Plaintiffs hereby make a claim for damages from the Defendants jointly and severally.

70. As a result of the Defendants' failure to warn, Plaintiff Larry Woolard suffered the injuries, illnesses, disabilities and/or damages hereinafter alleged.

**SIXTH CAUSE OF ACTION**
**CONSPIRACY AND PUNITIVE DAMAGES**
**(Against Metropolitan Life Insurance Company Only)**

71. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

72. Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products to which Plaintiff Larry Woolard was exposed, and such assistance by METROPOLITAN LIFE aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products by such manufacturers which proximately caused Plaintiff Larry Woolard's injuries, illnesses, disabilities and/or damages.

73.     In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.  METROPOLITAN LIFE also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

74.     Plaintiff Larry Woolard unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which METROPOLITAN LIFE published in leading medical journals.

75.     As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information after undertaking to do so; (i) the risk of harm to Plaintiff Larry Woolard from asbestos exposure was increased, and (ii) Plaintiff Larry Woolard suffered the injuries, illnesses, disabilities and/or damages previously described.

76.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Larry Woolard. Plaintiffs seek compensatory and punitive damages against METROPOLITAN LIFE as a result.

## DAMAGES
## LOSS OF CONSORTIUM

77.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

23

78.     Plaintiffs Larry Woolard and Anne Woolard were married on August 17, 1979, and have remained married at all times material hereto.

79.     As a direct and proximate result of the injuries, illnesses, disabilities and/or damages complained of herein with respect to Plaintiff Larry Woolard, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse Anne Woolard has also suffered and will continue to suffer loss of consortium, society, companionship, fellowship and other valuable services of her husband; and therefore, Plaintiff-Spouse Anne Woolard is entitled to damages for her loss of consortium, both past and future.

## COMPENSATORY AND PUNITIVE DAMAGES

80.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81.     As a result of the above-alleged conduct of the Defendants, Plaintiff Larry Woolard developed mesothelioma, as a consequence of which he has been damaged as follows:

     (a)    hospital and medical expenses incidental to Plaintiff Larry Woolard's illness;

     (b)    loss of earnings and future earning power of Plaintiff Larry Woolard;

     (e)    loss of Plaintiff Larry Woolard's general health, strength, and vitality;

     (c)    loss of pecuniary contributions to the heirs of Plaintiff Larry Woolard;

     (d)    loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Larry Woolard;

     (e)    future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Larry Woolard;

     (f)    pain and suffering of Plaintiff Larry Woolard;

     (g)    all other damages recoverable under said Act.

WHEREFORE, Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty, and willful, wanton, and malicious conduct as alleged herein proximately caused by the fault of the Defendants. Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000.00 plus interest as provided by law and the costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 14th day of May, 2018.

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC 27401
336-333-2244
jwblack@wardblacklaw.com